UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MELISSA GNOJEK,

                          Plaintiff,

                                               Case # 18-CV-121-FPG

v.

                                               DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

## INTRODUCTION

Plaintiff Melissa Gnojek brings this action pursuant to the Social Security Act seeking review of the denial of her Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") applications. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 21, 24.[1] For the reasons that follow, the Commissioner's motion is GRANTED and Gnojek's motion is DENIED.

## BACKGROUND

On July 1, 2013, Gnojek protectively filed an application for supplemental security income, and on January 3, 2014, she protectively filed an application for child's[2] insurance benefits based on disability. Tr. 178.[3] She alleged that she had been disabled since April 15, 2013 due to borderline personality disorder, chronic migraines, depression, and obsessive compulsive disorder ("OCD"). Tr. 182. On February 5, 2016, Gnojek and a vocational expert ("VE") testified at a

---

[1] Gnojek filed her initial motion at ECF No. 16, and then filed the operative amended motion at ECF No. 24.
[2] Gnojek filed her claim when she was older than 18 but younger than 22. *See* 20 C.F.R. § 404.350(a)(5).
[3] "Tr." Refers to the administrative record in this matter.

hearing before Administrative Law Judge Bryce Baird ("the ALJ"). Tr. 35. On September 22, 2016, the ALJ issued an unfavorable decision. Tr. 15. On November 24, 2017, the Appeals Council denied Gnojek's request for review. Tr. 1. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

When the Court reviews a final decision of the SSA, it does not "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities.

2

*Id.* §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. §§ 404.1520(d), 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* §§ 404.1509, 416.909.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. §§ 404.1520(e)-(f), 416.920(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  *Id*. §§ 404.1520(f), 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  *Id.*  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. §§ 404.1520(g), 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. §§ 404.1560(c), 416.960(c).

**DISCUSSION**

**I.      The ALJ's Decision**

At step one, the ALJ found that Gnojek had not engaged in substantial gainful activity since the application date.  Tr. 20.  At step two, he found that she had several severe mental impairments, and at step three, he found that none of them met or medically equaled the criteria of any Listings impairment.  Tr. 21.  At step four, the ALJ noted that Gnojek has no past relevant work, and at step five, he found that Gnojek can adjust to other work that exists in significant numbers in the national economy.  Tr. 28-29.  Accordingly, the ALJ found Gnojek not disabled.  Tr. 29.

**II.     Analysis**

Gnojek argues that the ALJ improperly weighed the record medical opinions, improperly found that Gnojek could perform unskilled work, and failed to determine that she needs a highly supportive environment.  Gnojek also argues that new evidence confirms that she would be unable to perform work on a regular and continuing basis.

For the following reasons, the Court rejects Gnojek's arguments, DENIES her motion for judgment on the pleadings, and GRANTS the Commissioner's motion for judgment on the pleadings.

**A.  The ALJ Properly Weighed the Medical Opinions**

Gnojek faults the ALJ for giving "little weight" to the opinions of Vicki Murphy, a psychiatric mental health nurse practitioner, and Carol Coles, a licensed clinical social worker—both treating sources—while giving "great weight" to the opinion of Kavita Subrahmanian, Ph.D., a psychological consultative examiner who examined Gnojek only once.  Murphy and Coles opined that Gnojek had fair to poor abilities to perform unskilled work, Tr. 464, 614, while Dr. Subrahmanian opined that Gnojek could perform various functions needed for unskilled work but

had moderate limitations in her ability to appropriately deal with stress. Tr. 353. Gnojek further argues that the ALJ's determination that she can perform unskilled work is unsupported by substantial evidence. The Court disagrees.

First, social workers and nurse practitioners are not "acceptable medical sources" and thus their opinions "are not subject to the presumption of deference accorded to treating physicians or other acceptable medical sources." *Perez v. Berryhill*, No. 1:17-CV-00069-MAT, 2019 WL 696911, at *6 (W.D.N.Y. Feb. 20, 2019). Nonetheless, the SSA's regulations require the ALJ to "evaluate every medical opinion he receives, regardless of its source." *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997), *aff'd*, 141 F.3d 1152 (2d Cir. 1998) (citation omitted). And the opinion of an "other source" who regularly treats a claimant is entitled to extra consideration. *See Vishner v. Colvin*, No. 1:14-cv-00431, 2017 WL 1433337, at *5 (W.D.N.Y. Apr. 24, 2017); *Lasiege v. Colvin*, No. 7:12-cv-01398, 2014 WL 1269380 (N.D.N.Y. Mar. 25, 2014).

Here, the ALJ properly considered Murphy's and Coles's opinions. He did not discount them solely because they came from non-acceptable medical sources; rather, he determined that even if Murphy and Coles "were acceptable medical sources, their opinions are not supported by the record as a whole, which shows that [Gnojek] has some limitations in social functioning and concentration, persistence, and pace, but . . . has good control of her symptoms with medication and remains capable of performing at least unskilled work." Tr. 27. This is an appropriate reason to discount the opinions because "the more consistent an opinion is with the record as a whole, the more weight [the SSA] will give to that opinion." 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

The ALJ also did not err by giving great weight to Dr. Subrahmanian's opinion. "[W]hile the Second Circuit has cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination, an opinion from a consultative medical examiner may

nonetheless constitute substantial evidence." *Debra E. v. Comm'r of Soc. Sec.*, No. 6:18-CV-00513 (NAM), 2019 WL 4233162, at \*8 (N.D.N.Y. Sept. 6, 2019) (quoting *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) (internal quotation marks omitted)).  In any case, the ALJ's RFC determination is more restrictive than Dr. Subrahmanian's opinion.  While Dr. Subrahmanian only noted a moderate limitation in Gnojek's ability to appropriately deal with stress, Tr. 353, the ALJ found moderate limitations in Gnojek's social functioning and concentration, persistence, and pace; and mild limitations in her activities of daily living.  Tr. 22.

Second, the ALJ's conclusion that Gnojek could perform unskilled work is supported by substantial evidence.  The ALJ cited evidence from multiple sources—not just Dr. Subrahmanian—in making his RFC determination.  For example, even though the ALJ gave Murphy's opinion little weight, he cited her treatment notes.  Specifically, while Murphy's medical source statement indicated that Gnojek had only fair to poor abilities to perform unskilled work, her treatment notes from June 2013 through January 2014 indicated that Gnojek was calm and cooperative, had good eye contact, good-to-okay memory, normal speech, okay thought content, a pleasant affect, and intact concentration.  Tr. 25, 308, 310, 363.

Additionally, the ALJ cited treatment notes from a June 2014 visit with another nurse practitioner, Christine R. Quinn-Schrader.  Gnojek told Quinn-Shrader that she spent her time painting, designing jewelry, watching TV, reading books, and sleeping; that she visited Florida with her father's family; that she had been living with her boyfriend for about a year and frequented concerts, movies, and state parks with him; and that she had been going to the gym and walking outside for exercise.  Tr. 375.

The ALJ also cited evidence from Wendy Weinstein, M.D., whom Gnojek saw several times.  In October 2014, Dr. Weinstein indicated that Gnojek had a depressed mood, but she was

cooperative and had an appropriate affect, a goal directed thought process, fair insight and judgment, clear and coherent speech, and normal cognition. Tr. 480. In March 2015, Dr. Weinstein indicated that Gnojek had a constricted affect and reported not doing well, but was pleasant and cooperative and had normal speech, a goal directed thought process, normal cognition, and fair insight and judgment. Tr. 476. In December 2015, Gnojek told Dr. Weinstein that she made a new friend with whom she had New Year's Eve plans, and that she was very happy about that. Tr. 608.

Based on the record as a whole, the ALJ concluded that Gnojek had mild limitations in her activities of daily living and moderate difficulties in social functioning and concentration, persistence, and pace. Tr. 22. The ALJ accounted for these limitations by restricting Gnojek to simple, routine tasks that can be learned after a short demonstration or within 30 days; only occasional interaction with co-workers and no more than superficial interaction with the public; and work that requires doing the same tasks every day with little variation in location, hours, or tasks. Tr. 23. The Court finds that this RFC determination was not erroneous. *See Patterson v. Comm'r of Soc. Sec.*, No. 1:18-CV-0556 (WBC), 2019 WL 4573752, at *4 (W.D.N.Y. Sept. 20, 2019) (noting that the "Second Circuit has repeatedly held that 'moderate' limitations do not preclude a plaintiff's ability to perform unskilled work," collecting cases so holding, and concluding that an RFC similar to the one in this case was consistent with a finding of moderate limitations in mental functioning).

Accordingly, the Court concludes that the ALJ did not err in weighing the opinions of Murphy, Coles, and Dr. Subrahmanian, and that substantial evidence supports the ALJ's finding that Gnojek's mental health impairments do not preclude her from performing unskilled work.

**B. The ALJ Properly Considered Evidence Regarding the Need for a Highly Supportive Living Environment**

Gnojek next argues that the ALJ failed to consider that her mother provides a highly supportive living environment outside of which she could not maintain employment. Again, the Court disagrees.

As noted above, the Court must determine "whether the SSA's conclusions were supported by substantial evidence in the record[.]" *Talavera*, 697 F.3d at 151 (citing 42 U.S.C. § 405(g)) (other citation omitted). The Court is not concerned with whether substantial evidence supports the claimant's position; rather, the Court must decide whether substantial evidence supports the ALJ's decision. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order). "Under this very deferential standard of review, once an ALJ finds facts, [courts] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Id.* at 58-59 (internal quotation marks and citation omitted) (emphasis in original). It is the ALJ's job to resolve conflicting record evidence and the Court must defer to that resolution. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citation omitted); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (when the court reviews a denial of disability benefits it must "defer to the Commissioner's resolution of conflicting evidence").

Here, while the evidence indicates that Gnojek's mother supports her in several ways, like by buying her groceries, paying her rent, and driving her to medical appointments, *see* Tr. 48-49, 51-52, 56, 60, it also shows that Gnojek considers her mother to be "her main trigger" for anxiety, and that her mother may enable her behavior. Tr. 375-76. Additionally, there is evidence that Gnojek functioned outside of her mother's supportive environment: Gnojek lived with a boyfriend for a period of time, was living alone at the time of the hearing, prepared food for herself, and went to concerts, movies, parks, and the gym. Tr. 49, 375. Regarding employment, she had a retail job

for a short period of time but needed to take several breaks when she had panic attacks. Tr. 54. While she was fired from that job, she indicated that it was because she attempted to take a leave of absence to care for her father. Tr. 348. In her retail job, she hated that "the customer is always right," and she said the thought of having a job makes her feel sick. Tr. 375. However, she testified that she can be around people for one to three hours. Tr. 53. When her father was suffering from cancer, she worked with the hospice nurse to take care of him, although her OCD caused her to be distracted. Tr. 47. However, Zoloft helps with her OCD and depression. Tr. 45. She also indicated that she would like to work with kids, take an online course, and have an in-home daycare. Tr. 375.

The ALJ properly weighed this evidence and resolved any conflicts. Some evidence showed that Gnojek's mother provided a supportive environment, while other evidence suggested that Gnojek could function adequately without her support. Some evidence showed that she struggled to perform her retail job, while other evidence indicated that she would prefer other jobs, like working with kids. While substantial evidence might support Gnojek's position, substantial evidence also supports the ALJ's decision, and the ALJ explained his reasoning and cited relevant evidence. Accordingly, the Court finds no error in the ALJ's consideration of the evidence regarding Gnojek's need for a highly supportive environment.

## C. Gnojek's Proffered New Evidence Would Not Change the Outcome of the ALJ's Decision

After the hearing before the ALJ, Gnojek submitted to the Appeals Council a letter from Coles indicating that she stopped treating Gnojek because she failed to regularly attend treatment sessions. Tr. 632. Gnojek argues that this letter proves that she cannot work on a regular and continuing basis.

The Court agrees with the Appeals Council that this additional piece of evidence would not likely change the outcome of the ALJ's decision. Tr. 2. The evidence before the ALJ already suggested that Gnojek was unable or unwilling to regularly attend treatment sessions. For example, Gnojek testified that her mother had to "drag" her to the hearing and to medical appointments. Tr. 51, 56. Quinn-Schrader's notes indicated that Gnojek was not seeking counseling or day treatment. Tr. 376. Dr. Weinstein's notes indicated that at one point, Gnojek refused to go to therapy. Tr. 477. The new letter from Coles is more of the same. Accordingly, the Court finds that Coles's letter would not have changed the ALJ's decision.

## CONCLUSION

For the reasons stated, Plaintiff's Amended Motion for Judgment on the Pleadings (ECF No. 24) is DENIED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 21) is GRANTED, and Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 26, 2019
      Rochester, New York

 

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court